IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NEVADA GENERAL INSURANCE COMPANY,**

    Plaintiff,

v.                                                 Case No. 11-cv-00183 RHS-CG

**PHILELICIA ENCEE,**

    Defendant.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant Philelicia Encee, through her undersigned counsel and pursuant to FRCP 12(b)(6), files this motion to dismiss the Complaint for Declaratory Relief filed by Plaintiff Nevada General Insurance Company. As grounds for this motion Defendant states that Plaintiff has failed to state a claim for upon which relief can be granted. In its Complaint Nevada General seeks a declaratory judgment from this Court that the New Mexico Supreme Court's interpretation of the uninsured motorists statute (NMSA §66-5-301), passed in 1978 and last amended in 1983, and a long standing related regulation promulgated many years ago by the Superintendent of Insurance (NMAC 13.12.3.9) violates the United States Constitution. The alleged constitutional violations are based on the Contracts Clause and on the Takings Clause. The New Mexico Supreme Court's interpretation of §66-5-301 and NMAC 13.12.3.9 does not violate either constitutional provision.[1] Nevada General's Complaint should be dismissed.

---

[1] The only issues raised in the Complaint for Declaratory Judgment are the two federal issues questioning the availability of UM/UIM insurance coverage. If this Court determines that the two federal issues raised by Plaintiff are not valid, then dismissal of the entire Complaint is appropriate. Any dispute as to the amount owed under the facts of the underlying action is not at issue in this lawsuit and will be determined in the current state court lawsuit filed by Ms. Encee against Nevada General for payment of UN/UIM benefits.

Defendant, Philelicia Encee, requests that this Court order the dismissal of Nevada General's Complaint. When deciding a motion to dismiss, the Court must determine if, while accepting all facts pled in the Complaint as true and granting all reasonable inferences from the pleadings in favor of the plaintiff, the complaint states a cause of action for which relief can be granted. *See, e.g. Park Univ. Enters., Inc. v. Am Cas Co.,* 442 F. 3d 1239 (10th Cir. 2006). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations with the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F. 3d 337, 340 (10th Cir. 1994). A complaint challenged by a Rule 12 (b)(6) motion must contain grounds of Plaintiff's "entitlement to relief and requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question before this Court is whether Nevada General's Complaint for Declaratory Judgment contains enough facts to state a claim to relief that is plausible on its face. *Ridge at Red Hawk, LLC v. Schneider,* 493 F. 3d 1174, 1177 (10th Cir. 2007). In order to determine whether a complaint states a plausible claim for relief a court must engage in a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal,* ____U.S. ____, 129 S. Ct. 1937 (2009). This Court must dismiss Nevada General's Complaint because the allegations in the Complaint, if assumed to be true, do not plausibly state a claim for relief.

**BACKGROUND**

Generally in its Complaint, Nevada General seeks relief in federal court from the consequences of a recent New Mexico Supreme Court case regarding uninsured/underinsured motorists (UM/UIM) coverage and the interpretation of §66-5-301 and NMAC 13.12.3.9.

Section 66-5-301 entitles an insured to UM/UIM coverage "in minimum limits. . .and such higher limits as may be desired. . .up to the limits of liability" and gives the insured the right to reject UM/UIM coverage. Regulation 13.12.3.9 provides that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance."  Prior to *Jordan* the Supreme Court had already (1) required a knowingly and intelligently made rejection, *Marckstadt,* 2010 NMSC 1, ¶ 20, 147 N.M.678  and (2) required the incorporation of the rejection into the policy in a way that  clearly and unambiguously called to the attention of the insured the fact that such coverage has been waived, *Romero v. Dairyland,* 111 N.M.154, 156, 803 Pd. 2d 243, 245 (1990).   Thus, even before *Jordan* a rejection had to be made  in a knowingly and intelligently manner and had to be made a part of the policy.

     The case forming the genesis of Nevada General's complaint is *Jordan v. Allstate Ins. Co.,* 2010-NMSC-051, 162, 245 P. 3d 1214.  In that case, the New Mexico Supreme Court, relying on NMSA §66-5-3-1 and NMAC 13.12.3.9, clarified that an insurer must obtain waiver of UM/UIM coverage in a particular way.  The *Jordan* court set forth what steps are necessary to meaningfully incorporate any waiver of UM/UIM coverage into the insurance policy to make the waiver effective. Specifically, any waiver must show that the insurer offered UM/UIM coverage in amounts equal to liability coverage limits and that the offer set forth other levels of coverage available and the corresponding premium for each level of coverage.  If an insurer fails to comply with the *Jordan* technical requirements the policy is reformed to include UM/UIM coverage equal to the policy's liability limits.  The New Mexico Supreme Court gave retrospective effect

to the *Jordan* requirements.  Nevada General, in this lawsuit, notably requests this Court to declare that the New Mexico Supreme Court's decision violates the United States Constitution.

In its Complaint Nevada General is essentially attacking the retrospective application of the New Mexico Supreme Court's requirements as violative of the Contracts Clause and the Takings Clause of the United States Constitution.  In its Complaint Nevada General avoids any mention of the *Jordan* Court's reasoning for the retrospective application.[2]

The Supreme Court detailed the technical requirements for a valid rejection of UM/UIM coverage in an amount equal to liability limits and declared that the decision would be applicable with full retroactivity. The Court noted that

> [d]espite this Court's repeated pronouncements that an insured's decision to reject UM/UIM coverage must be knowing and intelligent in order to effectuate New Mexico's public policy. . . these consolidated cases indicate that insurers continue to offer UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed choice.  Accordingly, we find it necessary to prescribe workable requirements for a valid and meaningful rejection of UM/UIM coverage in amounts authorized by statute."

*Jordan* at *20, 245 P. 3d at 1220.   The Court specifically determined that:

(1). "although in the past we have not expressly articulated the need for insurers to provide premium costs for each available UM/UIM coverage level, our holding is based on settled principles articulated in twenty years of UM/UIM jurisprudence." *Jordan* at *27, 245 P. 3d at 1222.

---

[2]  While federal courts have a bright line rule of retroactively applying appellate court decisions in all civil cases, New Mexico state courts do not. *Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 393, 881 P. 2d 1376, 1378 (1994).  New Mexico courts provide for a presumption of retroactivity in civil cases which can be overcome by the appellate court announcing that the rule will operate with selective prospectivity or pure prospectivity. *Beavers* at 398, 881 P. 2d at 1383.

(2).  "Retroactive application will provide meaningful enforcement of the requirements of Section 66-5-301 and 13.12.3.9 NMAC. . . ." and "As we noted in *Marckstadt,*'[t]he Legislature and the superintendent of insurance intended their rules to take effect immediately, and we will not second-guess them.' 2010 NMSC 1,P31." *Jordan* at ¶ 28, 245 P. 3d at 1223.

(3).  "On balance, we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries." *Id.* At ¶ 29, 245 P. 3d at 1223.

> I. **NEVADA GENERAL FAILS TO STATE A CLAIM ON THE ALLEGED VIOLATION OF THE CONTRACTS CLAUSE.**

Nevada General has not stated a claim upon which relief can be granted under the Contracts Clause of the United States Constitution.  Article I, § 10 of the Constitution provides: "No State shall. . .pass any . . . Law impairing the Obligation of Contracts. . . ."   The primary defect in Plaintiff's claim is that it cannot point to a "Law" which has impaired contractual obligations.  Plaintiff complains of a judicial interpretation of a New Mexico statute (NMSA §66-5-301).  The term "Law" in the Contracts Clause does not include a judicial decision.  In **1924** the United States Supreme Court stated:

> It has been settled by a long line of decisions, that the provision of §10, Article I, of the Federal Constitution, protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgments of courts.

*Tidal Oil Co. v. Flanagan,* 263 U.S. 444 (1924)(citations omitted).  Subsequently, in *Fleming v. Fleming,* 264 U.S. 29 (1924), the same court cited to the *Tidal Oil* decision and reaffirmed that the inhibition related to impairment of contracts was directed only against impairment by

legislation, and that judicial action presented no federal question.

The *Fleming* court also addressed the argument that the Iowa Supreme Court's new construction of a statute was an impairment of existing partnership contracts. In doing so the United States Supreme Court stated:

> the contention is that the same statute was one law when first construed, before the making of the contract, and has become a new and different act of the legislature by the later decision of the court. This is ingenious but unsound. It is the same law. The effect of the subsequent decisions is not to make a new law but only to hold that the law always meant what the court now says it means. The court has power to construe a legislative act, but it has no power by change in construction to date its passage as a law from the time of the later decision. A statute in force when a contract was made can not be made a subsequent statute through new interpretation by the courts.

264 U.S. at 31. *See also Barrows v. Jackson,* 346 U.S. 249, 260 (1953).

Courts around the country have continued to follow the *Tidal Oil-Fleming* line of reasoning. In 1979 the Supreme Court of Washington held that the retroactive application of the adoption of UM stacking where multiple premiums had been paid did not constitute an impairment of the obligations of contract under the United States Constitution. 589 P.2d 785 (Wa.1979). In doing so the Washington court held that the constitutional prohibition to impairment applied only to legislation and not judicial opinions. *Id.* at 788. In 1997 the Ohio Court of Appeals held that judicial decisions, even those altering the construction or interpretation of a statute do not constitute a "Law" for purposes of the federal constitutional ban on impairment of the obligation of contracts. *King v. Safeco Insurance Col,* 583 N.E. 2d 1051 (Ct. App. 1990). *See also*, *Gooding v. National Union Fire Ins. Co. Of Pittsburgh, PA.,* 2004 Ohio App. LEXIS 674 (Ct. App. Ohio Feb. 9, 2004). In 2007 the Texas Court of Appeals addressed an insurance company's argument that the trial court's interpretation of a statute was,

in and of itself, an unconstitutional impairment of the insurance company's contract obligations under the policy.  *Canal Ins. Co. v. Mark Hopkins d/b/a Hopkins Towind and Recovery,* 238 S.W. 3d 549 (Tx. Ct. App. 2007).  The Texas court stated: "The Contracts Clause of article I, section 10 is directed only against impairment by legislation, and not against the judgments of courts."  *Id.* at 567.

Thus, even taking as true, for purposes of this motion to dismiss, all of the facts alleged in the Complaint, Nevada General has failed to state a claim upon which relief has been granted.  The crux of a constitutional impairment of contract claim is that the State has passed a "Law" which plaintiff asserts impairs existing contractual obligations.  The Complaint does not point to any legislative act forming the basis of its constitutional claim.  Rather it repeatedly asserts that NMSA §66-5-301 as construed in *Jordan v. Allstate* violates the Contracts Clause.  To survive a motion to dismiss Plaintiff is required to allege sufficient factual allegations which when accepted as true state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).   Nevada General has failed to do so and its Complaint should be dismissed as to the claim based on an alleged violation of the Contracts Clause.

    **II.**    **NEVADA GENERAL FAILS TO STATE A CLAIM ON THE ALLEGED VIOLATION OF THE TAKINGS CLAUSE.**

Nevada General's second claim under the United States Constitution is that the New Mexico's Supreme Court's decision in *Jordan v. Allstate,* in which it construed NMSA § 66-5-301 and NMAC 13.12.3.9, violated the Takings Clause of the Fifth Amendment of the United States Constitution.  The Takings Clause of the Fifth Amendment provides that private property

shall not "be taken for public use, without just compensation." It applies to the States through the Fourteenth Amendment. *Chicago, B. & Q.R.Co. v. Chicago,* 166 U.S. 226 (1897).

### A. The *Jordan* Decision Cannot Be A Basis for Takings Claim.

Before analyzing Nevada General's allegations as to the alleged taking, this Court must determine if the *Jordan* decision can be the basis of a claim of a violation of the Takings Clause.

The Takings Clause itself contains only two conditions on a governmental power to take property: that the taking be for a public use and that the government provide just compensation to the owner. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron, U.S.A.,* 544 U.S. 528 (2005). The actions of the New Mexico Supreme Court did not involve a direct governmental appropriation or the physical invasion of private property. Generally, allegations of unconstitutional takings are lodged against a governmental legislative or executive body in an effort to stop the taking or to receive just compensation. Here the alleged "taker" (the New Mexico Supreme Court) is not a party to the action. While the United States Supreme Court is split on whether any action by a judicial body can be a taking for Fifth Amendment purposes, *Stop the Beach Renourishment, Inc. v. Florida Dept. Of Environmental Protection,* 560 U.S. ___, 130 S.Ct. 2592, nothing in Nevada General's Complaint rises to the level of a well plead complaint under the federal Takings clause.

### B. The Complaint Fails To Satisfy the *Iqbal/Twombley* Requirements.

Nevada General's Complaint seems to speculate that the *Jordan* Court's retroactive application of the manner in which insurance company's must comply with the requirements long ago imposed on insurers by §66-5-301 and NMAC 13.12.3.9 will deprive it of its property.

The alleged deprivation seems to be that it may have to pay money to third parties.  Complaint at ¶ 28.  That allegation is insufficient to state a claim under the *Iqbal/Twombley* standard.  Furthermore, the Takings Clause does not prohibit the taking of private property but merely places a condition of just compensation for any such taking.  *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987).

Nevada General has failed to allege that the government has not provided it with "just compensation".  It does not identify what was taken.  Nevada General alleges that the New Mexico Supreme Court's "construction of NMSA § 66-5-301 amounts to an economic regulation creating a liability to pay money to third parties. . . " Complaint at ¶ 28 (Dckt. 1).  It does not allege which part of the government failed to provide it with "just compensation".  It does not allege that its property was taken for a "public use".  Thus, under *Iqbal/Trombley*, Nevada General has failed to cross the line from speculation to plausibility.

It appears that Nevada General is alleging that the New Mexico Supreme Court has engaged in a regulatory taking of Nevada General's property.  Regulatory takings claims are governed by *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978).  The insurance industry is a highly regulated industry subject to regulation by the Superintendent of Insurance.  As such its "freedom to contract" is limited. As the United States Supreme Court recognized in *Lingle,* government regulation by definition "involves the adjustment of rights for the public good."  544 U.S. at 538.  In *Penn Central* the Supreme Court provided guideposts to employ to determine if a taking has occurred.  438 U.S. at 124.  They are: the economic impact of the law on the claimant, the extent to which the law has interfered with distinct investment-backed expectations and the character of the governmental action.  *Id.*  Nevada General's Complaint fails

9

to address these guideposts in any specific way and for that reason alone should be dismissed.

A review of Plaintiff's Complaint reveals that Plaintiff has set forth speculative and formulaic allegations addressing the economic impact of the *Jordan* requirements on it but does not meet the level of specificity required by *Iqbal/Twombley*.  The Complaint is replete with conclusory statement above the negative impact on Nevada General's financial condition.  No concrete facts are included and most of the conclusory facts appear to be speculation at best.

The Complaint also does not directly address the distinct investment-backed expectations although it does mention that Nevada General "could not have anticipated the severe retroactive liability to pay money to third parties created by *Jordan's* construction of NMSA §66-5-301." Complaint at ¶ 29.  As the court in *Canal Insurance Co. v. Hopkins,* 238 S.W. 3d 549, 570 (Tx.Ct. App. 2007) noted, the conduct of the business of writing insurance is a privilege granted by the states which is subject to state imposed conditions.  Industries which are heavily regulated have to expect to be subject to government regulation and any expectation of avoiding regulations are not reasonable.  See, *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986 (1984).  In the context of the insurance industry, the setting forth of certain technical requirements for an effective rejection after years of insurance companies failing to provide insureds with the information to make a knowing and meaningful and intelligent decision about UM/UIM coverage cannot form the basis of a taking under the Takings Clause of the United States Constitution.  A review of Plaintiff's Complaint reveals that Plaintiff has set forth speculative and formulaic allegations addressing  its expectations related to its contracts with its insureds but it fails to address the investment backed expectations at a level of specificity required by *Iqbal/Twombley*.

The character of the governmental action at issue in this case also justifies a dismissal of

Nevada General's takings claim.  The purpose of the Takings Clause is to bar government from forcing some people to bear public burdens which in all fairness and justice should be borne by the public as a whole.  See *Palazzolo v. Rhode Island,* 533 U.S. 606, 618 (2001).  While Nevada General's claims use some of the terminology applicable to a Takings Clause claim, it has failed to specifically allege what public burdens are relevant to UM/UIM rejection procedures.  The New Mexico Supreme Court merely set forth the technical requirements of an effective rejection.  The rejection requirement itself had been a part of the UM/UIM insurance regulatory landscape for many years and is something that Nevada General had to comply with as part of its grant of a privilege to conduct insurance business in New Mexico.  A review of Plaintiff's Complaint reveals that Plaintiff failed to allege how the nature of the governmental action by the New Mexico Supreme Court established a claim under the *Penn Central* analysis for regulatory takings in a way which satisfies the specificity required by *Iqbal/Twombley.*

## CONCLUSION

For all of the foregoing reasons, Nevada General's Complaint should be dismissed in its entirety.

>Respectfully submitted,
>
>SANDERS & WESTBROOK, PC
>
> /Maureen A. Sanders
>Maureen A. Sanders
>102 Granite Ave. NW
>Albuquerque, NM 87102
>(505) 243-2243
>m.sanderswestbrook@qwestoffice.net
>
>and

Albert N. Thiel, Jr.
Jeff Trespel
WILL FERGUSON & ASSOCIATES
1720 Louisiana Blvd. NE #100
Albuquerque, NM 87110
(505) 243-5566
al@fergusonlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of May, 2011 I filed the foregoing electronically through the CM/ECF system which cause the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Dale R. Rugge
RUGGE ROSALES & ASSOCIATES, INC.
901 Rio Grande Blvd. NW, Suite G-250
Albuquerque, NM 87104
(505) 243-3900
dalerugge@rugge-rosales.com


/Maureen A. Sanders
Maureen A. Sanders