UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

NEVADA GENERAL INSURANCE COMPANY,

        Plaintiff,

vs.                                                                    CASE No. 1:11-cv-183-JCH/CG

PHILELICIA ENCEE,

        Defendant.

## RESPONSE TO PRE-ANSWER MOTION TO DISMISS

**COMES NOW** Plaintiff, Nevada General Insurance Company (Nevada General), by its undersigned counsel, and files it's *Response to Defendant's Motion to Dismiss* filed May 31, 2011, Doc. 8.

### BACKGROUND

This case brought by Nevada General seeks declaratory relief with respect to judicial construction of New Mexico's uninsured motorist laws, NMSA 1978, §66-5-301 (1983) and 13.12.3.9 NMAC. This case is based on Federal Question jurisdiction. Nevada General asks the Court to resolve substantial questions of federal law arising under the United States Constitution. Therefore, this Court has original jurisdiction pursuant to 18 U.S.C. §1331.

New Mexico's uninsured motorist (UM) statute, NMSA 1978, §66-5-301 (1983) and its companion Administrative Code section, 13.12.3.9 NMAC, have been the subject of frequent litigation over the past two (2) decades. New Mexico Courts construed and reconstrued these laws numerous times. They have added requirements the laws never contained, issued conflicting opinions with contradictory results, and have judicially rewritten the laws to impose increasingly burdensome requirements on auto insurers that the laws themselves never contained. The result

has been a confusing series of cases dealing with the requirements for a valid rejection of UM coverage. For auto insurers, this has presented a constantly moving target of legal requirements.

In the recent case of <u>Jordan v Allstate</u>, 2010-NMSC-051, the New Mexico Supreme Court judicially rewrote New Mexico's UM laws to require auto insurers to provide retroactive UM coverage to everyone to whom a policy had ever been issued (with no time limitation), even where the persons signed rejections of UM coverage that were valid at the time they were signed, and even though the persons never purchased and never paid for UM coverage. Nevada General believes that this judicial rewriting of the UM laws violates its rights under the Contract Clause and Takings Clause of the U.S. Constitution.

A. THE CONFUSING AND CONTRADICTORY JUDICIAL HISTORY OF NEW MEXICO'S UNINSURED MOTORIST LAWS.

The basic requirements for a valid rejection of UM coverage were originally described in <u>Romero v Dairyland Ins. Co.</u>, 111 N.M. 154; 803 P.2d 243 (1990), to be: 1) a written rejection; 2) that is endorsed, attached, stamped, or otherwise made a part of the policy; and 3) which clearly and unambiguously calls to the attention of the insured the fact that UM coverage has been waived. Considerable case law has developed concerning how the second element is satisfied, but that is not relevant to the present case. What is relevant is the changing legal morphology of the third requirement, i.e. the contents of the written rejection. With respect to the third requirement, New Mexico's case law adopted terminology similar to that required for a valid waiver of the right to jury trial in a criminal matter, i.e. that the waiver be "knowing and intelligent". This language seems to first appear in <u>Vigil v Rio Grande Ins. of Santa Fe</u>, 1997-NMCA-124.

Importantly, in *Romero v. Progressive*, 2010-NMCA-24, ¶33, 148 N.M. 97, 103, the court noted that the written rejection in *Kaiser v DeHerrera*, 1996-NMSC-50, satisfied the knowing and intelligent requirement with respect to the contents of a written rejection, stating:

> in *Kaiser*, our Supreme Court held that a rejection of UM/UIM coverage was invalid where the copy of the insurance policy the insured received did not contain a copy of the rejection, **even though the insured had knowingly and intentionally signed a rejection of that coverage during the application process**.

*Romero v. Progressive Northwestern Ins. Co.*, 2010-NMCA-24, ¶33, 148 N.M. 97, 103 (emphasis added). The written rejection in *Kaiser* was quite simple. As noted by the court in *Kaiser*, it simply stated:

> I understand the State requires that Family Protection against Uninsured/Underinsured Motorists Insurance be afforded me under my motor vehicle liability policy unless I specifically reject this coverage. Accordingly, I reject Family Protection against Uninsured/Underinsured Motorists Coverage and direct the Company to issue my policy without the said coverage.

*Kaiser v. DeCarrera*, 1996-NMSC-50, 122 N.M. 221, 222. Thus, by reading case law, auto insurers learned in 1996 that they could satisfy the contents requirement of a written rejection by using language substantially similar to that quoted in *Kaiser*.

A series of surprises then came for auto insurers beginning ten (10) years later in 2006. In *Farm Bureau v. Jameson*, 472 F. Supp. 2d 1272 (D.N.M. 2006), the court held that an insurer must obtain a **signed** rejection of UM coverage in order for the rejection to be valid. However, in early 2008, the Court of Appeals in *Marckstadt v. Lockheed Martin Corp, and Mid-Century Ins. Co.*, 2008-NMCA-138, ¶17-20, declined to follow *Jameson,* and ruled there is no requirement of a **signed** rejection form, explaining that 13.12.3.9 NMAC contains no such requirement, <u>and that to hold otherwise would be adding language to the regulation that it did not contain</u>. *Id*. Thus, auto insurers by reading case law were lead to believe that courts would not add language to New Mexico UM laws that the laws did not already contain. The Court of Appeals in *Marckstadt*

ruled that an unsigned endorsement attached to the policy was an effective and valid rejection of UM coverage. *Id*. The Court of Appeals' position in *Marckstadt* was affirmed by the New Mexico Supreme Court. *Marckstadt v. Lockheed Martin Corp*., 2010-NMSC-1, ¶26, 147 N.M. 678, 687.

Shortly after the Supreme Court decision in *Marckstadt*, however, another surprise came with the Court of Appeals decision in *Farmers Ins. Co. v. Chen*, 2010-NMCA-31, ¶21, 148 N.M. 151, 154. There, the court rewrote UM laws creating a new requirement stating that to be valid, a written rejection must include at a minimum, information on the amount of coverage an insured is entitled to purchase, the amount of coverage they have in fact purchased, and the fact that they have rejected some amount of coverage. *Id*. Contrary to the Court of Appeals opinion in *Marckstadt*, the court in *Chen* was adding language to UM laws that they did not contain, and which indicated the contents of the written rejection in *Kaiser* would no longer be adequate.

About the same time, another opinion issued from the Court of Appeals, added more language to UM laws that was not contained in the laws. *Romero v. Progressive Northwestern Ins. Co*., 2010-NMCA-24, ¶31, 148 N.M. 97, 103. *Romero* added another new twist and again rewrote UM laws, ruling that for a rejection of UM coverage to be valid, the insurer must include notice that UM coverage could be increased or added to equal liability limits, and the insured must be notified that they have rejected an amount of UM coverage that they have a statutory right to purchase. *Id*.

Nevada General had been using its best efforts to comply with existing case law and had prepared an endorsement/rejection form for insureds to sign (as was done with Defendant herein, *see* **Ex. A to Complaint filed 2/25/11, Doc. 1-1**) in order to obtain valid rejections of UM coverage. In 2008, Nevada General inquired of the New Mexico Department of Insurance

(NMDOI) about the effect of its endorsement/rejection form and whether it had complied with UM laws. Nevada General was advised by the NMDOI that it had been the practice of the DOI that if the rejection is listed on the policy Declarations sheet and no premium for UM coverage was listed on the Declarations sheet (both of which Nevada General did, *see* **Ex. B to Complaint filed 2/25/11. Doc. 1-2**), then the rejection stands.  In 2010, a substantially similar endorsement/rejection form used by Nevada General to document an insured's choice to reject stacked UM coverage, was found by a New Mexico District Court to satisfy the requirement of a comprehensible written rejection under *Montano v. Allstate Indemnity Company*, 2004-NMSC-20. [*See*, **Ex. A attached**.]

In late 2010, the game changer case of *Jordan v Allstate*, 2010-NMSC-051, was issued by the New Mexico Supreme Court. All prior bets were off.  NMSA 1978, §66-5-301 (1983) and 13.12.3.9 NMAC were dramatically rewritten to do exactly what the Court of Appeals' opinion in *Markstadt* said should not happen; adding language to the UM laws that they did not contain. Once again, the requirements for a valid rejection of UM coverage were changed, and new burdens on auto insurers were announced. Under *Jordan*, for a UM rejection to be valid, the written rejection form had to: 1) inform the insured that they are entitled to purchase UM coverage equal to BI limits; and 2) provide the premium charge corresponding to each level of coverage offered, along with a statement that the insured had the right to reject UM/UIM coverage altogether.  *Id*. The court called this a "**menu of coverage options and corresponding premium costs**." *Id*. The court said that unless these requirements were strictly met, then UM/UIM coverage will be read into the policy equal to BI limits. As if this was not enough, the court said that this new rule would apply retroactively to all policies, without limitation. *Id*.

**B. MS. ENCEE NEVER PURCHASED OR PAID FOR UM COVERAGE, AND SIGNED A REJECTION OF UM COVERAGE THAT WAS VALID AT THE TIME IT WAS SIGNED.**

As detailed in Nevada General's *Complaint*, Ms. Encee never purchased and never paid for UM coverage. In fact, Ms. Encee signed and dated a rejection form that was apparently valid at the time as a knowing and intelligent rejection of UM coverage, and she received a policy Declarations page showing that she had "rejected" UM coverage. Nevertheless, counsel for Ms. Encee demanded that Nevada General pay uninsured motorist (UM) coverage benefits to Ms. Encee in connection with the motor vehicle accident of July 14, 2010, relying on the judicial rewriting of NMSA 1978, §66-5-301 (1983) and 13.12.3.9 NMAC, in *Jordan v Allstate*, 2010-NMSC-051.

## APPLICABLE LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to Nevada General, and draw all reasonable inferences in Nevada General's favor. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

To pass muster under Rule 12(b)(6), a complaint <u>need not recite detailed factual allegations</u>, but a plaintiff must set forth the grounds of his or her entitlement to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citation omitted). A plaintiff's

"allegations must be enough that, if assumed to be true, the plaintiff plausibly has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## DISCUSSION

Nevada General filed its *Complaint for Declaratory Relief* on February 25, 2011, detailing for over twelve (12) pages the factual allegations supporting its Federal Constitutional Claims. Despite the detailed factual allegations, counsel for Ms. Encee filed a dilatory motion under Fed. R. Civ. Proc. 12(b)(6), claiming the *Complaint* was not sufficiently detailed. Ms. Encee's reason for filing the instant *Motion to Dismiss* was not based on any real deficiency in Nevada General's *Complaint*, but to delay answering while she raced for a result by filing an *Amended Complaint* asserting claims against Nevada General in the State Court lawsuit with the other driver.[1]

**A. CONTRACT CLAUSE ANALYSIS.**

**1. State Court Judicial Decisions are Subject to Constitutional Scrutiny when They Involve Construction of a State Statute.**

With respect to Nevada General's Contract Clause claim, Defendant argues principally that constitutional review under the Contract Clause is not available for judicial decisions, only for legislative action. This argument misses the point. Nevada General is asking this Court to scrutinize New Mexico UM laws, specifically NMSA 1978, §66-5-301 (1983) and 13.12.3.9 NMAC, under the Contract Clause. This distinction was made by the United States Supreme Court in *Tidal Oil v. Flanagan*, 263 U.S. 444 (1924) as discussed further below.

---

[1] On March 10, 2011, counsel for Ms. Encee was provided a copy of Nevada General's *Complaint for Declaratory Relief* in this case. On March 30, 2011, counsel for Ms. Encee agreed to accept service for Ms. Encee in this case. Counsel for Ms. Encee then filed an *Amended Complaint* in the State Court on April 28, 2011, naming Nevada General as a new Defendant. Nevada General has filed a *Motion to Dismiss* Ms. Encee's claims against it in the State Court case, because the doctrine of "priority jurisdiction" requires dismissal of her State Court claims against Nevada General where this case was already pending. *See*, *Cruz v. FTS Constr., Inc.*, 2006-NMCA-109, 140 N.M. 284, 285.

First, Defendant is simply wrong in arguing that there can be no constitutional review of judicial decision construing New Mexico's UM laws. The United States Supreme Court has made clear that judicial action by a state's highest court may be challenged on constitutional grounds when that judicial action involves construction of a state statute. In *Minnesota ex rel. Pearson* v. *Probate Court*, 309 U.S. 270, 273 (1940), the court held that for the purpose of determining whether a state statute was constitutionally valid "we must take the statute as though it read precisely as the highest court of the State has interpreted it." In *Winters* v. *New York*, 333 U.S. 507, 514 (1948), the court said that when a state statute has been construed so that "interpretation by [the state court] puts these words in the statute as definitely as if it had been so amended by the legislature," claims that it violated the constitution must be judged in that light. The court in *Wainwright v. Stone*, 414 U.S. 21, 22-23 (1973), explained "this has been the normal view in this Court." Thus, there is no bar to this Court considering a constitutional challenge to New Mexico's UM laws, as interpreted and rewritten by *Jordan v Allstate*. In fact, this Court must take New Mexico's UM statutes as though they read precisely as interpreted and rewritten by *Jordan v Allstate,* and "as definitely as if [they] had been so amended by the legislature."

Defendant's reliance on *Tidal Oil v. Flanagan*, 263 U.S. 444 (1924) is entirely misplaced. As explained by the Court in *Tidal Oil*, that case involved only a situation "wherein it is claimed that a state court judgment alone, and without any law, impairs the obligation of a contract." *Id*. at 453-4. It is not the state court judgment in *Jordan* alone that Nevada Genera contends violates the Contract Clause, but rather it is New Mexico's UM laws rewritten by *Jordan*. As the Court explained in *Tidal Oil*, when subjecting state statutes to Contract Clause scrutiny, "it is the statute as enforced **by the State through its courts** which impairs the contract, not the judgment

8

of the court." *Tidal Oil Co. v. Flanagan*, 263 U.S. at 453 (emphasis added). In fact, describing cases where as here, with respect to UM laws that become part of the insurance contract, the court said:

> It often happens that a law of the State constitutes part of the contract and, to make the constitutional inhibition effective, this Court must exercise an independent judgment in deciding as to the validity and construction of the law and the existence and terms of the contract.

*Id*. at 453 (emphasis added).

*Bradbury v Aetna*, 589 P.2d 785 (Wa. 1979), cited by Defendant (without case title), is neither on point nor helpful to Defendant's position. It merely held that a state court was not constitutionally compelled to apply new "decisional law" retroactively or prospectively. Further, the case of *King v Safeco*, 583 N.E.2d 1051 (Ohio App. 1990), cited by Defendant has been criticized - for the very proposition Defendant relies on - by a subsequent Ohio Court of Appeals' case. *See*, *National Mut. Ins. Co. v. Jackson*, 1992 Ohio App. LEXIS 1597 (Ohio Ct. App. 1992).  None of the state court cases cited by Defendant should in any way impact this Court's analysis, when the United States Supreme Court has clearly ruled that when determining whether a state statute is constitutionally valid, "we must take the statute as though it read precisely as the highest court of the State has interpreted it." *Winters* (*supra*).

**2. Nevada General has Stated a Claim for Violation of the Contract Clause.**

Defendant gives only perfunctory verbiage in arguing that the facts alleged by Nevada General are insufficient to state a claim for relief for violation of the Contract Clause. This is because it stretches credibility to claim that the twelve (12) pages of allegations in Nevada General's *Complaint* somehow do not put Defendant on fair notice of the claim.

A claim that a state statute results in an unconstitutional impairment of a contract is based on the allegation that the law operated as a substantial impairment of a contractual relationship.

9

*Energy Reserves Group. Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983); *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1977).  A violation occurs where there is a contractual relationship, where a law impairs that contractual relationship, and where the impairment is substantial. *Stillman v. Teachers Ins. & Annuity Ass'n College Retirement Equities Fund*, 343 F.3d 1311, 1321 (10th Cir. 2003) (quoting *Energy Reserves Group*, 459 U.S. at 411-12).  Nevada General has alleged all of these elements and provided specific facts in support. The level of scrutiny to which the legislation will be subjected increases as the severity of the impairment increases. *Energy Reserves, 459 U.S. at 411*; *Allied Structural Steel Co. v. Spannaus, 438 U.S. 234 (1978)*.  Nevada General has specifically alleged and explained how and why the impairment is severe.

Although not necessarily an element of a claim, a substantial impairment can arguably be justified but there must be a significant and legitimate public purpose such as the remedying of a broad and general social or economic problem. *Energy Reserves, 459 U.S. at 411-412*. This requirement guarantees that the State is exercising its police power, rather than providing a benefit to special interests. *Energy Reserves, 459 U.S. at 412*. Once again, Nevada General has alleged the lack of an appropriate significant and legitimate public purpose and alleged facts showing how the UM laws benefit special interests.

Even with a significant and legitimate purpose for a statute, under a Contract Clause analysis, the Court determines whether the state's adjustment of 'the rights and responsibilities of contracting parties is based upon reasonable conditions and of a character appropriate to the public purpose. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 505 (1987) (quoting *Energy Reserves Group*, 459 U.S. at 412). Nevada General has addressed this point in its *Complaint* as well, specifically alleging the lack of adequate justification.

10

United States Supreme Court precedent supports Nevada General's position that New Mexico's UM laws as rewritten by *Jordan* violate the Contract Clause. In *W. B. Worthen Co. v. Thomas,* 292 U.S. 426 (1934), the court considered an Arkansas law that exempted the proceeds of life insurance from collection by judgment creditors. Stressing the retroactive effect of the state law, the court held that it was invalid under the Contract Clause, since it was not precisely and reasonably designed to meet a grave temporary emergency in the interest of the general welfare. Other Federal Courts have reached similar conclusions with respect to state statutes involving insurance. In *Educational Employees Credit Union v. Mutual Guar. Corp.*, 50 F.3d 1432 (8th Cir. Mo. 1995), the Eight Circuit Court of Appeals held that a Missouri state statute substantially impaired the insurance contract between the parties because it materially altered the guarantee associations duties with respect to a credit union's capital contribution and special assessment. The Court held the statute was not of a character appropriate for the public purpose, because in analyzing the entire public purpose, the court must consider the interests of other credit union members, both foreign and domestic, who have capital contributions and special assessments deposited with a mutual share guaranty association, and because the withdrawal of the credit union's capital contribution could lead to losses by other insureds. *Id*.

State Courts have reached similar results with respect to laws regulating insurance. *See e.g., Health Insurance Association of America et al v. Harnett*, 376 N.E.2d 1280 (Ct. App. N.Y. 1978) (Held constitutional right to be free from impairment of contract requires a choice open to the insurer to increase premiums, or in the alternative to terminate the policy and escape the added risk imposed by the statutory modification; the right to increase premiums alone is not sufficient). In *Insurers' Action Council, Inc. v. Markman*, 490 F. Supp. 921 (D. Minn. 1980) the court noted that the Contracts Clause may be violated where a statute requires an insurer to

include new coverage in outstanding policies (as in *Health Insurance Ass'n of America v. Harnett*, 376 N.E.2d 1280 (N.Y. App.1978)) or where a statute requires the insurer to offer additional coverage at its own expense.

B.  **TAKINGS CLAUSE CLAIM.**

As with the Contract Clause claim, Defendant fails to understand the scope of a Takings Clause claim, and therefore takes too limited a view of what constitutes a taking. Defendant is correct that the "Takings Clause" derives from the Fifth Amendment, which mandates that "no person shall be . . . deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation," and that this prohibition is made applicable to the states by the Fourteenth Amendment. *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172 (1985) (*superseded by statute on other grounds*).

To establish a claim under the Takings Clause, a party claiming a taking must establish: 1) governmental action amounted to a taking of his property; 2) the taking did not advance a legitimate governmental interest; and 3) there was no just compensation for the taking. *See, Connolly v. Pension Ben. Guaranty Corp.,* 475 U.S. 211 (1986); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986 (1984).

What Defendant fails to recognize is that with respect to the governmental action element, the United States Supreme Court has held that laws violate the Takings Clause where they impose a liability to pay money, not to the Government, but to private third parties. *Eastern Enterprises v Apfel*, 524 U.S. 498, 528-9 (1998), *see also* discussion in J. Breyer dissent at 554-555. *Apfel* reached the result that a regulation creating a liability to pay money to a third party, did not pass a "justice and fairness" analysis, and explained that stricter limits may apply when a

statute operates in a retroactive manner. In such circumstances, the Takings Clause requires a justice and fairness analysis. *Id*. at 522-524. Such laws can violate the Takings Clause where they impose severe retroactive liability to pay money on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience. *Id. at* 528-9.

In its *Complaint*, Nevada General has plead ample facts supporting the required elements for a Takings Claus claim under *Apfel*. These include, for example, how New Mexico's UM laws impose a severe retroactive liability on a limited class of parties (including insureds that actually purchased and paid for UM/UIM coverage), that Nevada General could not have anticipated the severe retroactive liability, and that the extent of the retroactive liability is substantially disproportionate to the prior contractual relationships between Nevada General and insured persons that neither purchased nor paid for UM/UIM coverage. Nevada General also plead that NMSA §66-5-301, as judicially construed by *Jordan*, has the effect of divesting Nevada General of property long after the company believed its liabilities under the UM/UIM coverage provisions of the subject policies had been limited, and that the distance back into the past that NMSA §66-5-301 (as rewritten) reaches to impose a liability on Nevada General and the magnitude of that liability raises substantial questions of justice and fairness. Nevada General alleges and explains how New Mexico's UM laws as judicially interpreted and rewritten do not pass the justice and fairness analysis required by the Takings Clause.  Nevada General clearly has stated a claim for relief under the Takings Clause, especially in light of *Enterprises v Apfel*, 524 U.S. 498 (1998). Defendant's Motion should therefore be denied.

C.  **IF THERE ARE ANY DEFICIENCIES IN PLAINTIFF'S *COMPLAINT*, THEN LEAVE TO AMEND AND NOT DISMISSAL IS APPROPRIATE.**

The purpose of Rule 12(b)(6) is to afford Defendant fair notice of Plaintiff's claims and the factual ground upon which they are based." <u>U.S. ex rel. Lemmon v. Envirocare of Utah, Inc</u>., 614 F.3d 1163, 1172 (10th Cir. 2010). Under the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). "If it is at all possible that the party against whom the dismissal is directed can correct any defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1483 (3d ed. 2010).

**WHEREFORE,** Nevada General Insurance Company prays that this Court enter an Order denying Defendant's *Motion to Dismiss* and requiring Defendant to Answer, without delay.

Respectfully submitted,

**RUGGE, ROSALES & ASSOCIATES, P.C.**


By: _____(*electronically signed*)_____
  **DALE R. RUGGE**
  *Attorneys for Plaintiff, Nevada General Insurance Company*
  901 Rio Grande Blvd. NW, Suite G-250
  Albuquerque, New Mexico 87104
  Telephone:  (505) 243-3900
  Facsimile:  (505) 243-8678
  e-mail: dalerugge@rugge-rosales.com

I hereby certify that I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the *Notice of Electronic Filing*:

Maureen A. Sanders
*Attorneys for Defendant, Philelicia Encee*
Sanders & Westbrook, P.C.
102 Granite Avenue NW
Albuquerque, New Mexico 87102
Telephone:  (505) 243-2243
Facsimile: (505) 243-2750
e-mail: m.sanderswestbrook@qwestoffice.net

Albert N. Thiel, Jr.
Jeffrey S. Trespel
*Attorneys for Defendant, Philelicia Encee*
Will Ferguson & Associates
1720 Louisiana Blvd. NE #100
Albuquerque, New Mexico 87110
Telephone: (505) 243-5566
Facsimile: (505) 243-5699
e-mail: al@fergusonlaw.com
         jeff@fergusonlaw.com

on this ___9th___ day of June, 2011.


_____(*electronically signed*)_____
**DALE R. RUGGE**